**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

REGGIE ANDRE BECKTON,     :

                  :

     **Plaintiff**       **CIVIL ACTION NO. 3:16-0051**

                  :

     **v**              :

                  :     **(JUDGE MANNION)**

**FASCIANA FRANCIS, *et al.*,**

                  :

     **Defendants**

**MEMORANDUM**

## I.  Background

Plaintiff, Reggie Andre Beckton, an inmate confined in the United States Penitentiary, Lewisburg, ("USP-Lewisburg"), Pennsylvania, filed the above captioned <u>Bivens</u>[1] action pursuant to <u>28 U.S.C. §1331</u>. (<u>See</u> Doc. <u>1</u>, complaint). The named Defendants are Steve Brown, Assistant Health Service Administrator, and Fasciana Francis, Housing Unit Physician. <u>Id</u>.

Plaintiff alleges that "he gave notice and/or disclosed to medical staff on numerous occasions that he was experiencing the following conditions: abdominal pains, abnormal and or irregular bowel movement, dark red blood in stool, excessive mucus discharge from rectum in the absence of a bowel movement, no bowel movement after consuming moderate doses of laxative,

---

[1] <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971)</u>.

black colored stool(s), burning sensation and or pain in epidgastric area." Id.

In response, Plaintiff claims that Defendants "provided [him] with stool sample cards to corroborate this fact, and then directed him to return the cards after completing any future bowel movements." Id. "All (3) cards were sent to the labs for testing, all (3) cards returned revealing positive indications for blood being present in Plaintiff's stool." Id. Plaintiff claims that "Medical Staff, having formal indication return from Plaintiff's lab results corroborating a finding that blood was indeed present in the Plaintiff's stool, a request was made by medical staff to have Plaintiff scheduled to undergo an outpatient colonoscopy exam," which was "approved by the Assistant Health Service Administrator" as well as the institution's warden. Id.

Plaintiff claims that "despite having been approved and scheduled to be sent out to an outside hospital to undergo a colonoscopy examination, Plaintiff continued to make several complaints to medical staff regarding his health conditions, most notably Plaintiff complained of the following conditions: abdominal pains, abnormal and or irregular bowel movement, dark red blood in stool, excessive mucus discharge from rectum in absence of bowel movement, no bowel movement(s) after consuming moderate doses of laxative, black colored stool(s), burning sensation and or pains in epidgastric area; medical staff however failed or refused to act on the Plaintiff's health

2

concerns and essentially made efforts to justify such failure or refusal by assuring the plaintiff that he would eventually be sent out to undergo his colonoscopy exam". Id. "Dissatisfied with medical failure to act and or make a consistent and complete record or the Plaintiff's medical concerns, prompted Plaintiff to initiate the institution's administrative remedy process against medical staff." Id.

On January 12, 2016, Plaintiff filed the instant action in which he requests "the court to determine whether its constitutionally permissible for health care providers in a prison institution to receive notice of a medical complaint filed by a prisoner asserting the following conditions: abdominal pains, abnormal and or irregular bowel movement, dark red blood in stool, excessive mucus discharge from rectum in absence of bowel movement, black tarry stools, no bowel movement(s) after consuming moderate doses of laxative, black colored stool(s), burning sensation and or pains in epidgastric area. . .and essentially fails in its capacity". Id.

Presently before the Court is Defendants' motion to dismiss and, or in the alternative, motion for summary judgment. (Doc. 12). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion for summary judgment will be granted

3

## II.   Standards of Review

### A. Bivens Standard

Plaintiff's claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa. 1992).

## B. **Motion to Dismiss**

Defendant's pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the Defendant's motion. Thus, the motion will be treated as solely seeking summary judgment. See Latham v. United States, 306 Fed. Appx. 716, 718 (3d Cir. 2009) (when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

## C. **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated

allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

III.    **Statement of Facts**[2]

On October 16, 2014, Plaintiff reported to sick call, stating his "hemorrhoids acting up" and "requests suppositories." (Doc. 17-1 at 113, Clinical Encounter). Defendant Fasciana ordered hydrocortisone Acetate Suppositories for Plaintiff to address his complaint, and advised him to seek out further medical assistance if his problem persisted. Id.

On December 30, 2014, Plaintiff was seen by Nurse Practitioner Zimmerman, who recorded the following:

> Inmate presents to sick call stating that he has had abnormal bowel movements for a "lengthy period of time". States when he defecates he gets traces of blood and excessive mucus in his stool. Sometimes only gets mucus as a discharge. Inmate shows me toilet paper with both blood and mucus on this. Has not had

---

[2]Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 17) will be deemed admitted.

> recent bloodwork. Denies any abdominal pain/distention. Has a
> history of external hemorrhoids.

(Doc. 17-1 at 108, Bureau of Prisons Health Services Clinical Encounter). In

response to Plaintiff's complaints, a Comprehensive Metabolic Profile, CBC

w/diff and Occult Blood x3 was ordered. Id.

On January 26, 2015, Plaintiff appeared for his blood work and a report

was issued on January 27, 2016. (Doc. 17-1 at 106, Blood Work Results).

On February 23, 2016, an Administrative Note was added to Plaintiff's

medical file, stating the following:

> I/M Beckton #55374-056 was given FOB cards X3 on 1-26-15. I/M
> was instructed to return the FOB cards within one week. I/M
> refused to complete the cards and return them.

(Doc. 17-1 at 102). Plaintiff was counseled that a refusal of treatment could

result in a "deterioration of your current health status which could cause

undetectable illness, increased illness and also your own death." (Doc. 17-1

at 101, Medical Treatment Refusal).

On March 20, 2015, Plaintiff reported to sick call with the following

complaint:

> Inmate reports to sick call with c/o "a shortage of blood circulation
> in my legs". Also states he gets headaches, dizzy spells and light
> headedness when he bends forward to pick up something and his
> legs go numb at the same time and this comes and goes. Has
> been going on for "a long time". Thinks he may have a pinched

nerve or clogged artery??

(Doc. 17-1 at 95, Clinical Encounter). Physician Assistant Seroski noted the

following:

> Per chart review IM has hx of feigning an illness and non
> compliance with medications as well as lab work, however he did
> not refuse last lab work and WBC count was abnormal, therefore
> I am ordering a repeat on CBC. If WBC still abnormal may
> consider HIV testing or vitamin deficiency?? Exam normal today
> which I discussed with him however he did not like that answer.
> Encouraged OTC meds for headache. Will f/u after lab work if
> abnormal otherwise RTC if worsens or changes.

Id.

Plaintiff's repeat bloodwork was performed on April 9, 2015. (Doc. 17-1

at 92, Blood Work Results). An Administrative Note was entered into his file

on April 10, 2015, indicating that "WBC abnormal however improved from

previous lab, see lab reports." (Doc. 17-1 at 91, Administrative Note).

On May 4, 2015, an Administrative Note was added to Plaintiff's medical

record, noting that "per K. Lindsey, needs new order for occult cards." (Doc.

17-1 at 89, Administrative Note). That same date, Plaintiff completed the

occult cards and testing was performed. (Doc. 17-1 at 86, Administrative

Note). The results showed positive for fecal occult blood. Id. Based on these

findings, it was determined that a colonoscopy was needed to further evaluate

the source of Plaintiff's bleeding. (Doc. 17-1 at 79, Administrative Note).

On May 6, 2015, the physician assistant located on Plaintiff's block was notified of the need for a colonoscopy, and a consult for a colonoscopy was put in place. (Doc. 17-1 at 72, Administrative Note). Also, on May 6, 2015, the Utilization Review Committee reviewed and approved Plaintiff's referral for a colonoscopy. (Doc. 17-1 at 71, Utilization Review Committee Action).

On May 29, 2015, a medication reconciliation encounter was performed on Plaintiff at the Special Housing Unit. (Doc. 17-1 at 69, Administrative Note). Plaintiff's prescription for stool softeners was renewed. Id.

On June 9, 2015, PA Seroski reported to Plaintiff's SHU cell for a sick call and noted the following:

> Inmate reports to sick call on morning rounds. Hx of rectal bleeding with BM. Stating "you people aren't doing anything about this – I care about my health – my people's are going to call up here if you don't start doing something about this."

(Doc. 17-1 at 67, Clinical Encounter). PA Seroski was concluded that:

> Inmate has a positive OBT with approved colonoscopy ordered and pending scheduling. When I try to reiterate this to him he states, "You need to do something right now for this and medical is not doing their job". I once again verbalize that he needs to await the colonoscopy and he becomes disruptive on the block by screaming and yelling – at this time I terminated his sick call visit and left the range.

Id.

On June 15, 2016, a Sick Call Note Encounter performed at Plaintiff's

11

SHU cell indicates the following:

> cop out given at sick call rounds, IM standing at cell door, NAD reports "I noticed a growth forming around pelvis area, it looks like a mole"

(Doc. 17-1 at 63, Clinical Encounter). Plaintiff was examined at his cell door and it was determined that he had a "1cm benign nevus at midline, suprapubic area, along waistline of boxer shorts" which was "well rounded, no irregular borders, appears smooth" and "no other legions noted." Id. Plaintiff was assured it was a benign appearing mole, and to continue to observe, following up if any changes should occur. Id. No further treatment was indicated and it was noted that Plaintiff "made no mention of his chronic GI complaints." Id.

On June 29, 2015, a Sick Call Note Encounter performed at Plaintiff's SHU cell indicates the following:

> Inmate reports to sick call c/o "rash". Inmate can not tell me how long it has been present just states, "I have been monitoring it and I need to be seen." When I try to collect hx he avoids my question, however, does deny being itchy.

(Doc. 17-1 at 61, Clinical Encounter). It was determined that Plaintiff had "multiple papules to bilateral with mild erythema" with "no abscess, pustules or vesicles noted" or "papules to feet or in between web spaces" and "no burrows noted." Id. Plaintiff was advised that no antibiotic was needed at this

time, and that it should resolve on its own, but to return immediately if the conditions worsens. Id.

On June 30, 2015, a Sick Call Note Encounter performed at Plaintiff's SHU cell indicates the following:

> Inmate reports to sick call c/o "I got bit by a spider." Tells me that he notices a spot on his left thigh last night. Denies fever or discharge. Hurts to touch.

(Doc. 17-1 at 59, Clinical Encounter). PA Seroski noted that Plaintiff's left thigh presented with "annular mild erythema the size of a quarter with central pinpoint pustule", with "no fluctuance noted" and no raised area or infection. Id. Plaintiff was advised to apply warm compresses, monitor it and return is it worsens. Id.

On July 2, 2015, a Sick Call Note Encounter performed at Plaintiff's SHU cell reveals the following:

> IM standing at cell door during sick call rounds c/o "pissing blood" does not offer any other description, denies flank pain or fever. No N/V. Inmate has had various complaints over the last month. He has pending colonoscopy for blood in the stool, he did not mention any GI symptoms or symptoms of rash today. He also says "can you check to see if pharmacy has something for me?, for my stool?" – chart review revealed refill of stool softener which was renewed via refill tab today.

(Doc. 17-1 at 57, Clinical Encounter). PA Jordan ordered a urine dipstick, and recommended Plaintiff follow-up at sick call and chronic care clinic as needed.

Id. PA Jordan further noted the following: "will check UA, plan pending results" and that "inmate has numerous varied complaints on a frequent basis with poor history to detail" and "I am beginning to question the validity of his complaints." Id.

Plaintiff was seen again on July 7, 2015, with the Sick Call Note Encounter revealing:

> Inmate reports to sick call c/o "abdominal pain" which he states has been going on for "a minute." Tells me that he tried taking Tums and Zantac years ago but that didn't help so when his pain started back up he didn't bother trying either medication again. Pain is located in the epigastric area and described as a burning feeling which occurs right after eating. Tells me the only thing he eats is fruits and vegetables and he never eats "unhealthy." Per commissary review he has purchased hot spicy ramen noodles, snickers, and coffee. Denies vomiting or hematemesis. He has hx of rectal bleeding with positive OBT and external hemorrhoids currently being worked up with pending outside colonoscopy. Denies family hx of colon cancer or weight loss.

(Doc. 17-1 at 54, Clinical Encounter). PA Seroski ordered bloodwork, encouraged Plaintiff to use Zantac daily, avoid late night eating, spicy foods, caffeine and citrus, as well as lay with head elevated at night instead of flat. Id. Plaintiff was told to follow-up at sick call and chronic care as needed and to immediately return to sick call if condition worsens. Id. Plaintiff's blood work was conducted on July 9, 2015. (Doc. 17-1 at 53, Lab Results).

On July 15, 2015, Plaintiff filed Administrative Remedy No. 828321,

claiming that he needs immediate medical treatment for blood in his stool.

(Doc. 17-1 at 12, Administrative Remedy Generalized Retrieval).

On July 22, 2015, Plaintiff was treated at Sick Call by PA Warnick, who

recorded the following:

> Inmate stops me today to explain that he has had left chest pain
> (points to epigastric area) for a long time and he tried ranitidine.
> "They found out that didn't work." Now he is concerned that he
> has to wait too long for a colonoscopy because he is bleeding in
> the toilet and spits up blood sometimes. He states sometimes he
> tries to have a bowel movement but only has mucous. He does
> not admit to lower pain or cramping. He is concerned that he is
> going to lose to much blood.

(Doc. 17-1 at 46, Clinical Encounter). PA Warnick assessed Plaintiff as a

"person with feared complaint in whom no diag made", reporting his encounter

as follows:

> I spent several minutes talking to the inmate at his cell. I let him
> know he does not look anemic and when I stated that he probably
> has had blood drawn, he got me the results which showed a slight
> neutropenia, H/H perfect. I tried to make him feel better that he is
> not losing so much blood that it reflects in his labs. He then turned
> to the low WBC that he said he could have a serious infection in
> his "ulcer". I attempted to alleviate those fears to be met with the
> MCHC. We were not making any positive progress, so I again let
> him know that his H/H was not consistent with the degree of blood
> loss he claims. He then stated he knows he will have to wait to
> long to have the colonoscopy because he "is an inmate". I
> checked the EMR and he in fact has a pending colonoscopy.

Id.

On July 23, 2015, Plaintiff's Administrative Remedy, No. 828321, was denied. Id.

On July 28, 2015, Plaintiff requested a complete copy of his medical records. (Doc. 17-1 at 44, Medical Records Request). On August 3, 2015, Plaintiff's complete medical record, consisting of 250 pages, was provided to Plaintiff. Id.

On August 10, 2015, Plaintiff filed an appeal of Administrative Remedy No. 828321 to the Northeast Regional Director. (Doc. 17-1 at 12, Administrative Remedy Generalized Retrieval).

On August 13, 2015, Plaintiff underwent a colonoscopy at Evangelical Community Hospital, Lewisburg, Pennsylvania. (Doc. 17-1 at 36, Operative Report). The postoperative diagnosis was "some mild internal hemorrhoidal disease with hypertrophy of the anal papilla" with "no other abnormalities noted." Id.

On August 14, 2015, Administrative Remedy No. 828321 was rejected by the Regional Office for not being submitted in proper form, and Plaintiff was given ten (10) days to resubmit his appeal. Id. There is no record that Plaintiff filed any further appeal for Administrative Remedy No. 828321.

On August 25, 2015, Plaintiff requested a copy of his colonoscopy

report, which was supplied to him on August 31, 2015. (Doc. 17-1 at 35,

Request).

On October 23, 2015, during an evaluation encounter performed at the

SHU, Plaintiff was seen by Defendant Fasciana, and reported the following:

> Routine sick call rounds at cell window. Asked if everything was alright. Advised inmate that his recent colonoscopy revealed internal hemorrhoids. Reference 06/09/2015 encounter. Inmate then went on to state, "you are telling me that I have hemorrhoids. I have the report. What's today's date? What time is it now? Who sent you here?" Inmate voiced no medical concerns.

(Doc. 17-1 at 24, Clinical Encounter). Plaintiff was provided with the requested

information and the conversation was terminated. Id. Defendant Fasciana

noted that Beckton was alert and oriented and did not appear in any distress

during the visit. Id. Defendant Fasciana counseled Beckton on his plan of

care, advised him to seek sick call if his symptoms reoccurred, but noted that

there was "no evidence of learning" in Beckton. Id.

On November 10, 2015, Plaintiff filed Administrative Remedy No.

841802, claiming that he wants to be seen for bowel problems. (Doc. 17-1 at

13, Administrative Remedy Generalized Retrieval). On November 13, 2015,

Plaintiff's grievance was denied. Id.

On December 10, 2015, Plaintiff was seen at sick call by Defendant

Fasciana. (Doc. 17-1 at 20, Clinical Encounter). Plaintiff complained of

"unable to generate regularity in my bowel movements." Id. Defendant Fasciana noted that Beckton was alert and oriented and did not appear in any distress, and that because a colonoscopy and gastrointestinal ("GI") workup had recently been completed on Beckton and the results were negative, "no further intervention was necessary." Id. Defendant Fasciana counseled Beckton on his plan of care, advised him to seek sick call if his symptoms reoccurred, but again noted that Beckton showed "no evidence of learning." Id.

On December 14, 2015, Plaintiff filed an appeal of Administrative Remedy No. 841802 to the Northeast Regional Director. (Doc. 17-1 at 13, Administrative Remedy Generalized Retrieval). On December 16, 2015, Administrative Remedy No. 841802 was rejected an untimely by the Regional Office. Id. There is no record that Plaintiff filed any further appeal for Administrative Remedy No. 841802.

## IV.   Discussion

### A. Exhaustion

Defendants contend that Beckton's complaint should be dismissed for his failure to exhaust available administrative. In pertinent part, the Prison

18

Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. §1997e(a); Woodford v. Ngo, 548 U.S. 81 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 548 at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will

result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. Id. As such, it must be pleaded and proven by the Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Bureau of Prisons ("BOP").

"The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter. This procedure applies to all inmates confined in Bureau of Prisons institutions. . . ." 28 C.F.R. §542.10. Inmates are to informally present their complaints to the staff and the staff is to attempt to resolve the matter. 28 C.F.R. §542.13(a). If informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden. 28 C.F.R. §542.14(b). The warden is then to respond to the inmate's complaint within twenty (20) days. Id. at

§542.18. If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director. Id. at §542.15. If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the Federal Bureau of Prisons, which office is the final administrative appeal in the Bureau of Prisons. Id.

The record reveals that, although Plaintiff twice attempted to exhaust administrative remedies with respect to the claims raised within, he failed to appeal those remedies to final review. (See Doc. 17-1 at 9-14, Administrative Remedy Generalized Retrieval).

With respect to Plaintiff's Administrative Remedy No. 828321, although rejected by the Regional Office for not being submitted in proper form, Plaintiff was granted ten (10) days within which to correct the administrative deficiency and resubmit his appeal to the Regional Office. There is no record evidence demonstrating that Plaintiff corrected the deficiencies and resubmitted his appeal. (See Doc. 17-1 at 9-14, Administrative Remedy Generalized Retrieval). Thus, Plaintiff failed to complete the administrative remedy process with respect to Administrative Remedy No. 828321.

On November 10, 2015, Plaintiff again attempted to exhaust his administrative remedies with respect to his bowel issues, by filing

21

Administrative Remedy No. 841802. Id. Plaintiff, however, failed to bring a timely appeal of the November 10, 2015 denial of Administrative Remedy No. 841802. Id. Thus, nothing in the record before this Court establishes that Beckton pursued any administrative remedy to the Regional Director, nor the Central Office. It is evident that Plaintiff failed to follow the procedural requirements of the BOP. Failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. See Spruill v. Gillis, 372 F.3d 218, 222-26 (3d Cir. 2004). Plaintiff's failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

In this case, the record clearly discloses that Beckton failed to exhaust

In Spruill, supra, our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under §1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in §1997e(a)." Id. at 231, 232.

In this case, the record clearly discloses that Beckton failed to exhaust

his administrative remedies with respect to his medical claim. Thus, Beckton

has sustained a procedural default with respect to these claims.

Spruill cited with approval the Seventh Circuit decision in Pozo v.

McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231.

In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must

file complaints and appeals in the place, and at the time, the prison's

administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added).

Beckton offers no evidence to justify his failure comply with BOP

requirements. Consequently, he is now foreclosed from litigating his

remaining claims in this Court.

In Spruill, the Third Circuit found that a procedural default component

to the exhaustion requirement served the following congressional objectives:

"(1) to return control of the inmate grievance process to prison administrators;

(2) to encourage development of administrative record, and perhaps

settlements, within the inmate grievance process; and (3) to reduce the

burden on the federal courts by erecting barriers to frivolous prisoner

lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL

2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss

an inmate's action for failure to timely pursue an administrative remedy over

the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to enter judgment in favor of Defendants.

### B. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d

326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth

Amendment. <u>See</u> <u>White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990)</u>. In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a <u>§1983</u> cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. <u>See</u> <u>Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)</u>.

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. <u>Id.</u>, <u>991 F.2d at 69</u>. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. <u>Spruill, 372 F.3d 236</u>.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. <u>Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988)</u>. <u>See</u> <u>McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977)</u>; <u>Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976)</u>.

Additionally, if there is a dispute over the adequacy of the received

treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The record before this Court demonstrates that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Although the court has concerns about the delay in time between the ordering of his colonoscopy and its occurrence, its results support the defendants' medical assessment for which this court should not be in a position to second guess. The facts remain that the plaintiff has been continually assessed, monitored and treated since his first sick call visit on October 16, 2014.

At best, the record demonstrates Plaintiff's disagreement with the type and timeliness of the treatment rendered. However, his mere disagreement with the course of action that the medical department took based on the symptoms he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at

105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)). This is particularly so in light of the fact that there are no facts of record that demonstrate that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse.

Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Plaintiff does not suggest that the institution's medical staff were aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a pro se complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it). Thus, Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under §1983,

Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

Moreover, to the extent that Plaintiff believes that he has been misdiagnosed, mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners. Durmer, 991 F.2d at 67. Once again, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110.

Thus, the Plaintiff has failed to present evidence from which a reasonable jury could conclude that the Defendants Francis and Brown possessed the culpable mental state necessary for Eighth Amendment liability to attach. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 346; West v. Keve, 571 F.2d at 161. Indeed, the extent and quality of medical attention that the was provided to Plaintiff precludes a finding of deliberate indifference.

## C. **Preliminary Injunction**

Plaintiff seeks preliminary and declaratory injunctive relief, "declaring

that [he] has a constitutional right to be free from assault" and that he has "declared that [his] safety is being threatened by staff deliberately housing [him] with inmates whom staff are aware have a violent history of inmate assaults, and that [he] no longer wishes to be housed with the inmate whom [he is] currently in the cell with nor under the conditions that [he] have to fight him in order to be rehoused with an inmate who is programing." (Doc. 11, brief in support).

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. See American Tel. and Tel. Co. V. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 US. 1103 (1995). Moreover, issuance of such relief is at the discretion of the trial judge. Orson, Inc. v. Miramax Film, Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:

    (1)   likelihood of success on the merits;
    (2)   irreparable harm resulting from a denial of relief;
    (3)   the harm to the non-moving party if relief is granted; and
    (4)   the public interest.

United States v. Bell, Civ. No. 1:CV-01-2159, 2003 WL 102610, *2 (M.D. Pa. January 10, 2003)(internal citations omitted). It is the moving party that bears

the burden of satisfying these factors. Id.

Additionally, there must be "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Little v. Jones , 607 F.3d 1245, 1251 (10th Cir. 2010); see also Adams v. Freedom Forge Corp., 204 F.3d 475, 489-90 (3d Cir. 2000) (affirming denial of injunction where plaintiffs' harm was "insufficiently related to the complaint and [did] not deserve the benefits of protective measures that a preliminary injunction affords").

As the Third Circuit made clear in Ball v. Famiglio, 396 F. App'x. 836, 837-38 (3d. Cir. 2010), a plaintiff fails to meet the requirements for injunctive relief when the individuals whose conduct he hopes to enjoin are not named as defendants in the action and the relief sought is completely unrelated to the allegations in the complaint. Moreover, as this Court noted in . Kates v. Bledsoe, 2012 WL 6721069 at *2 (M.D. Pa. 2012), no preliminary injunction should ever be granted on grounds not raised in the complaint since there is – by the very absence of the issue in the complaint – no likelihood of success on the merits.

Based on Plaintiff's failure to prevail on the merits of the instant civil rights action and the fact that Plaintiff's motions for injunctive relief bear no

relation to the complaint or the defendants named therein, Plaintiff's motion for preliminary injunction (Doc. 12) and motion for declaratory judgment (Doc. 23) will be denied.

## V.     Conclusion

Based upon the undisputed facts of record, Defendants Francis and Brown are entitled to summary judgment with respect to Plaintiff's Eighth Amendment medical claim and Plaintiff's motions for injunctive relief will be denied. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 21, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0051-01.wpd